UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-61074-RAR

RUFUS YOUNG,

       Petitioner,

v.

STATE OF FLORIDA,

       Respondent.

_____/

## ORDER DENYING HABEAS CORPUS PETITION

**THIS CAUSE** is before the Court on a *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, challenging Petitioner's convictions and sentences imposed by the Seventeenth Judicial Circuit Court in and for Broward County in Case No. 05-000739CF10A.  *See* Petition [ECF No. 1] ("Pet.").  Respondent filed a Response to the Petition, *see* Response to Order to Show Cause ("Response") [ECF No. 15], and Petitioner filed a Reply, [ECF No. 20].  Having carefully reviewed the record and governing law, and for the reasons set forth below, the Court **DENIES** the Petition.

## PROCEDURAL HISTORY

The Petitioner, along with a codefendant, was indicted on five counts in state court: one count of felony murder in the first degree, in violation of Fla. Stat. § 782.04(1)(a)2. (Count 1), and four counts of attempted armed robbery in violation of Fla. Stat. § 812.13(2)(a) (Counts 2–5). Indictment [ECF No. 16-1] at 7–9.  After a jury trial, the Petitioner was adjudicated guilty on all five counts of the Indictment and was sentenced to life imprisonment on Count 1 and four

concurrent fifteen (15) year sentences on the remaining counts.  *See* Judgment and Sentencing Orders [ECF No. 16-1] at 11–28.

Petitioner appealed his conviction and sentences to the Florida Fourth District Court of Appeal ("Fourth DCA").  Petitioner raised five claims on direct appeal: (1) the trial court erred when it admitted Petitioner's "involuntary confession," Direct Appeal Initial Brief [ECF No. 16-1] at 51; (2) the trial court erred when it failed to find that the State committed a discovery violation after "the prosecutor falsely represented to the court . . . [that Petitioner] identified himself to [his mother] as the person in a composite sketch related to the crime," *id.*; (3) trial counsel rendered ineffective assistance of counsel "when he failed to object when the State repeatedly insinuated to the jury [that Petitioner] had confessed involvement in the crime to his mother," *id.*; (4) "the trial court committed reversible error when it repeatedly barred Appellant from recross-examination to explore [new] material that was central to the issues in his trial," *id.* at 52; and (5) the "cumulative effect" of the prosecutor's comments during closing arguments "reached down into the validity of the trial and caused a verdict not based on evidence," *id.*  The appellate court affirmed the trial court in an unwritten opinion dated April 27, 2011.  *See Young v. State*, 59 So. 3d 1151 (Fla. 4th DCA 2011).  The Fourth DCA issued its mandate thereafter on May 27, 2011.  Direct Appeal Mandate [ECF No. 16-1] at 160.

After Petitioner's direct appeal concluded, Petitioner attempted to file a "Motion for Postconviction Relief" pursuant to Florida Rule of Criminal Procedure 3.850.  *See* First Motion for Postconviction Relief [ECF No. 16] at 162–80.  The first page of the Postconviction Motion indicated that it was provided to prison officials for mailing on January 23, 2012,[1] and received by

---

[1] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it."  *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

the state court on January 30, 2012. *Id.* at 162. On May 16, 2013, Petitioner filed a "new" Motion for Postconviction Relief. *See* Second Motion for Postconviction Relief [ECF No. 16-1] at 189–205. Petitioner also contemporaneously filed a "Motion to Accept Motion for Postconviction Relief as Timely Filed Nunc Pro Tunc to Original Date of Mailing and Leave to Amend Motion for Postconviction Relief." *See* Motion to Accept Postconviction Motion as Timely ("Timeliness Motion") [ECF No. 16-1] at 208–12. Petitioner's central argument in the Timeliness Motion was that he properly filed his original January 23, 2012 Motion but "was informed by the Clerk's office that there was no record of having received the motion." *Id.* at 209. In an abundance of caution, and with the express purpose of preserving the timeliness of a future federal habeas petition, Petitioner requested the state court to consider his most recent postconviction motion as timely filed as of January 23, 2012—and not May 16, 2013. *Id.* at 210–11. Based on the state court record provided by the Respondent, the Court cannot ascertain whether the state court ever explicitly ruled on the Timeliness Motion.[2]

After the state court subsequently ordered Petitioner to amend his postconviction motion, *see* Order Striking Motion for Postconviction Relief [ECF No. 16-1] at 244, Petitioner filed an Amended Motion for Postconviction Relief on November 15, 2013, *see* Amended Postconviction Motion [ECF No. 16-1] at 252–80. Petitioner's Amended Postconviction Motion contained three grounds for relief: (1) trial counsel was ineffective "for failing to sufficiently argue during a pre-trial motion to suppress that incriminating statements made by Young were not only the product of coercive police conduct, but were obtained after his initial detention became an unlawful arrest

---

[2] On July 26, 2019, Petitioner filed a Petition for Writ of Mandamus with the Fourth DCA requesting that the Fourth DCA order the state circuit court to "issue a ruling . . . [on his] motion to accept a timely filed nunc pro tunc to the original filing date[.]" Petition for Writ of Mandamus [ECF No. 16-3] at 89. The Fourth DCA ultimately dismissed the petition, concluding that the motion itself was moot "as the [trial] court granted leave to amend and ruled on the merits of the amended motion." Order Dismissing Petition [ECF No. 16-3] at 107.

without probable cause, and for failing to call available witnesses that would have provided crucial testimony regarding Young's apprehension by police," *id.* at 256; (2) trial counsel was ineffective "for failing to object" to the prosecutor's "insinuation" during closing arguments that Petitioner had confessed to his mother, *id.* at 266; and (3) trial counsel was ineffective "for failing to advise Young that the independent act doctrine was a viable and valid defense under the facts and circumstances of his case," *id.* at 271.

On August 22, 2019,[3] the State filed a Response to Petitioner's Amended Postconviction Motion. *See* State's Response [ECF No. 16-2] at 2–8. The State argued that the state court should summarily deny all three grounds of Petitioner's Amended Postconviction Motion. *Id.* at 8. That same day, the state court denied the Amended Postconviction Motion "for the reasons contained in the State's response[.]" Order Denying Amended Postconviction Motion [ECF No. 16-3] at 81. Petitioner appealed the denial of his Amended Postconviction Motion to the Fourth DCA. *See* Notice of Appeal [ECF No. 16-3] at 83–84. On February 20, 2020, the Fourth DCA again affirmed the state trial court in an unwritten opinion. *See Young v. State*, 291 So. 3d 951 (Fla. 4th DCA 2020). The Fourth DCA's mandate issued on March 20, 2020, *see* Postconviction Mandate [ECF No. 16-3] at 140, and the instant Petition was filed with the Court on June 1, 2020, *see* Pet. The Petition raises the three following claims:

1. **Ground One**: Trial counsel rendered ineffective assistance by "misadvising Petitioner that there was an arrest warrant; failing to file a motion to suppress incriminating statements made by Petitioner after an illegal arrest; and for failing to call available witnesses that would have provided crucial testimony regarding the illegal arrest and resulting interrogations." Pet. at 6.

2. **Ground Two**: Trial counsel was ineffective "for failing to advise Petitioner that the independent act doctrine was a viable and valid defense under the facts and circumstances of his case[.]" *Id.* at 12.

---

[3] There is no explanation in either the state court docket or Respondent's appendix as to why there was a delay of nearly six years before the State filed a Response to the Amended Postconviction Motion. *See generally* State Court Docket [ECF No. 16-1] at 2–5.

3. **Ground Three**: Trial counsel was ineffective for failing to object to the prosecutor's insinuation, without an evidentiary basis, that Petitioner "confessed to his mother[.]" *Id.* at 20.

## STANDARD OF REVIEW

### A. *Review Under 28 U.S.C. § 2254*

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Some of the more restrictive limits are found in § 2254(d). Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted). A state court's decision qualifies as an "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413) (cleaned up).

"'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d); *see also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA.").   The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions.  *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").  This is because federal courts ordinarily presume that § 2254(d)'s deferential standard applies when a constitutional claim has been presented to a state court and denied in that forum.  *See, e.g.*, *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added).  From there, federal courts "presume that the unexplained decision adopted the same reasoning."  *Id.*   "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different

grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court has explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must <u>also</u> satisfy *Brecht*, even if AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

### B. *Ineffective Assistance of Counsel Claims*

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently.  *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

## PROCEDURAL REQUIREMENTS

### A.  Timeliness

Generally, "a person in custody pursuant to the judgment of a State court" has a one-year period to file a habeas corpus petition.  *See* 28 U.S.C. § 2244(d)(1).  The timeliness of the Petition was once in doubt, as Respondent originally contested whether Petitioner's first state postconviction motion was properly filed on January 23, 2012.  *See* Order to Show Cause [ECF No. 14] at 1–2.  Respondent now concedes that Petitioner's postconviction motion began to toll the limitations period on January 23, 2012, "meaning that only 189 days of untolled time passed between Petitioner's conviction becoming final and the filing of the instant Petition."  *Id.* at 2; *see also* Response at 7 ("Thus, the Petition would be timely.").  Since Respondent has waived any objection to the timeliness of the Petition, the Court will accept that waiver and consider the Petition timely.  *See Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a state

intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

### B. Exhaustion

Pursuant to 28 U.S.C. § 2254(b)–(c), habeas petitioners must exhaust their claims before presenting them in a federal habeas petition. *See Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) ("Plainly, the purpose of the exhaustion requirement is to afford the state court 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  This requirement is met if a petitioner "fairly present[ed] every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up).  "If a petitioner fails to 'properly' present [their] claim to the state court—by exhausting [their] claims and complying with the applicable state procedure—prior to bringing [their] federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Id.*  In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  "In Florida, exhaustion usually requires not only the filing of a [Florida Rule of Criminal Procedure 3.850] motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (quoting *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)).

Similar to the limitations defense, a respondent also has the option to waive an exhaustion defense. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").  Here, Respondent concedes that both Grounds Two and

Three have been "arguably exhausted," so the Court will therefore review those two claims on the merits without further comment. *See Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion.") (cleaned up).   However, Respondent also argues that Ground One is unexhausted and procedurally defaulted because the state court "decided [the claim] on independent and adequate state procedural grounds."   Response at 9.   Upon review, the Court concludes that Ground One can be denied on the merits, so it is in the interest of judicial economy to simply "skip over" a discussion of Ground One's alleged procedural deficiencies. *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, [the court] can skip over the procedural bar issues.").

## ANALYSIS

Turning to the substance of Petitioner's three claims, the Court must first distinguish its standards of review.   Since Grounds Two and Three were exhausted and adjudicated on the merits in state court, this Court must apply the deferential standard of § 2254(d).   As previously discussed, the Court must review the reasonableness of the factual findings and legal conclusions made by "the highest state court decision reaching the merits of a habeas petitioner's claim[.]" *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008).   In this case, the Fourth DCA was the highest court to adjudicate Grounds Two and Three. *See Young v. State*, 291 So. 3d 951 (Fla. 4th DCA 2020). Since the Fourth DCA merely affirmed the lower court in an unwritten opinion, the Court must "'look-through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson*, 138 S. Ct. at 1192.   Unfortunately, the lower state postconviction court did not provide its own independent reasoning and instead adopted the reasoning of the State's Response to Petitioner's Amended Postconviction Motion. *See* Order Denying Amended

Postconviction Motion [ECF No. 16-3] at 81 ("[T]he Defendant's Motion for Post-Conviction Relief is hereby DENIED, for the reasons contained in the State's response[.]").  In this circumstance, the Court shall review the reasonableness of the State's Response as it is the presumptive reasoning of both the Fourth DCA and the state postconviction court.  *See Benjamin v. Jones*, No. 17-cv-60855, 2018 WL 7288078, at *18 (S.D. Fla. Aug. 30, 2018) ("[T]he State's response is presumptively the reasoning of the [Fourth DCA].  This is because the [Fourth DCA] did not provide a written opinion, and, after looking through to the lower court, the trial court seems to have incorporated the State's rationale."), *report and recommendation adopted*, 2019 WL 180214 (S.D. Fla. Jan. 14, 2019).

Conversely, the Court must take a different approach with Ground One and review it *de novo*.  While it is an exceedingly rare circumstance for a federal court to circumvent § 2254(d)'s standard of review, there are some limited exceptions.  The statute itself permits *de novo* review when "a claim is properly presented to the state court, but the state court does not adjudicate it on the merits," *Mason*, 605 F.3d at 1119, or when a federal court determines that the state court's decision involved an unreasonable application of the facts or law, *see Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1255 (11th Cir. 2013); *see generally* 28 U.S.C. § 2254(d).  However, the Supreme Court has also recognized an additional exception: "Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, [and] the habeas petitioner will not be entitled to a writ of habeas corpus . . . on *de novo* review."  *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (emphasis added).  In other words, the Supreme Court has recognized an "'Occam's razor' approach" whereby the district court can dispense with a complicated review of a claim's procedural bar issues and instead review it *de novo*, but only when the "claim would fail on the merits in any event." *Dallas v. Warden*,

964 F.3d 1285, 1307 (11th Cir. 2020).[4]  In sum, the Court will first conduct a *de novo* review of Ground One and then proceed to analyze Grounds Two and Three under AEDPA's standard of review.

### A.  Ground One

Ground One of the Petition advances three subclaims, all of which are related to a central conceit: trial counsel was ineffective for failing to suppress incriminating statements Petitioner made by arguing that they were taken in the wake of an illegal arrest.  First, Petitioner contends that counsel "misadvised" Petitioner that he had been arrested with a valid arrest warrant—even though that was not true.  *See* Pet. at 7.  Second, Petitioner argues that his confession was the result of an illegal, warrantless arrest in violation of the Supreme Court's decision in *Dunaway v. New York*, 442 U.S. 200 (1979) and that counsel unreasonably failed to file a motion to suppress on that basis.  *See id.* at 9 ("Counsel should have argued about facts in a motion to suppress [that Petitioner's] statements [were] made after an illegal arrest.").  Third, Petitioner claims that counsel was ineffective for failing to call certain witnesses during his suppression hearing who could have purportedly testified about the illegality of Petitioner's arrest.  *See id.* at 11 ("The failure to call these witnesses prejudiced the outcome of [the] trial because had the witnesses testified at the suppression hearing based on illegal arrest, Petitioner would not have been convicted.").  The Respondent argues that defense counsel did file a motion to suppress which "addressed the subject of the illegal arrest" and that Petitioner failed to show he was prejudiced by any conceivable error. Response at 18–19.

---

[4] One more thing.  Although the Court does not need to apply § 2254(d)'s standard when conducting a *de novo* review, Petitioner must still show that any alleged error had a "substantial and injurious effect or influence" on the verdict since the *Brecht* harmless error standard <u>always</u> applies on collateral review.  *See Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

If a defendant makes an inculpatory statement incident to an illegal arrest "the prosecution must show not only that the statements meet the Fifth Amendment voluntariness standard, but also that the causal connection between the statements and the illegal arrest is broken sufficiently to purge the primary taint of the illegal arrest[.]" *Dunaway v. New York*, 442 U.S. 200, 204 (1979). In Florida, a person cannot be arrested unless law enforcement has "probable cause that a crime has been or is being committed." *Golphin v. State*, 945 So. 2d 1174, 1180 (Fla. 2006). So long as law enforcement has probable cause, an arrest can be made without an arrest warrant provided the arrest takes place in a public location. *See State v. Ramos*, 378 So. 2d 1294, 1297 (Fla. 3d DCA 1979) ("Unlike the search of private premises, however, there is no constitutional requirement that a police officer obtain a search or arrest warrant before he may seize and search a person."). While a defendant can still make voluntary statements after an illegal arrest, the court must first ensure itself that the "taint" of the illegal arrest has dissipated by reviewing: (1) "the temporal proximity of the arrest and the confession," (2) "the presence of intervening circumstances," and (3) "the purpose and flagrancy of the official misconduct[.]" *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975); *accord State v. Eubanks*, 588 So. 2d 322, 322 (Fla. 4th DCA 1991).

As an initial matter, the Court rejects Respondent's first argument as conclusively refuted by the state court record. Although Respondent avers that "counsel filed a motion to suppress that, while mainly arguing coercion, also addressed the subject of the illegal arrest[,]" the record does not support that argument. Response at 18. As Respondent concedes, defense counsel's primary argument was that "statements allegedly made by the Defendant should be excluded from evidence as inadmissible because they are the direct product of an interrogation conducted by the police while suspect was psychologically induced by police and/or in custody without having been adequately advised of his [rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966)]." Motion

to Suppress [ECF No. 16-2] at 11.  The state trial court explicitly denied the motion to suppress on the basis that Petitioner <u>did</u> voluntarily waive his *Miranda* rights—there was no discussion about the legality of Petitioner's arrest.  *See* Order Denying Motion to Suppress [ECF No. 16-2] at 22 ("Defendant's [*Miranda*] waiver was voluntary with a full awareness of the nature of the rights being abandoned and the consequences of their abandonment.").  Although trial counsel alluded to an argument that "there [was] absolutely no physical evidence whatsoever that was gathered by law enforcement which links or tends to implicate the Defendant in the attempted robbery/shooting," the Court believes that this perfunctory reference was not sufficient to allege a constitutional violation pursuant to *Brown* or *Dunaway*.  Arguments in Support of Motion to Suppress [ECF No. 16-2] at 14.

Nevertheless, the Court essentially agrees with Respondent's contention that a motion to suppress based on *Dunaway* would have been unsuccessful.  Restated, the Court finds that counsel's performance (or lack thereof) in these matters had no "reasonable probability" of affecting the outcome of Petitioner's case.  *See Strickland*, 496 U.S. at 694.  As to the first subclaim, the presence of an arrest warrant was irrelevant and any "misadvice" about the existence of a warrant had no bearing on outcome of the case. Detective Berrena testified during the suppression hearing that Petitioner was picked up "off the street" and not from his home or another private location.  Suppression Hr'g Tr. [ECF No. 17-2] at 8.  Therefore, the lack of an arrest warrant, by itself, would not have made any arrest illegal.  *See Ramos*, 378 So. 2d at 1297.

The second subclaim fails because *Dunaway* would not have been a valid basis to suppress Petitioner's statement.  The Court will assume, without deciding, that Petitioner was under arrest from the moment Detective Berrena made contact with Petitioner.[5]  The key issue, therefore, is

---

[5]  Despite this assumption, there is ample evidence suggesting that Petitioner was not under arrest and that he voluntarily chose to cooperate with law enforcement.  *See, e.g.*, Suppression Hr'g Tr. [ECF No. 17-2] at

whether law enforcement had "probable cause" at the time of Petitioner's arrest which would allow "a reasonable person to believe that an offense [had] been committed and that the defendant committed it[;]" if not, then the arrest would have been illegal. *Walker v. State*, 741 So. 2d 1144, 1145 (Fla. 4th DCA 1999). Prior to the "arrest," Detective Berrena had been informed by "two eyewitnesses that stated they could identify the shooter and the non-shooter[,]" and that Benjamin Sanders—Petitioner's codefendant—"was positively identified as the shooter." Suppression Hr'g Tr. [ECF No. 17-2] at 8. Detective Berrena also received tips via the "Crime Stoppers" tip-line that Mr. Sanders <u>and</u> Petitioner were the two individuals involved in the shooting. *See id.* ("We received numerous Crime Stopper tips, and we placed the individuals given to us in Crime Stoppers in photo lineups. . . . And we also received through Crime Stoppers [Benjamin Sanders's] name as well as Rufus Young's name."). Detective Berrena also clarified that although "different people" had reported that Petitioner was involved via Crime Stoppers, he knew the identity of at least one of the tipsters. *See id.* at 21 ("Q: Well, are you telling us you do know the name? A: I know one name, yes. Q: Who gave you Rufus Young? Who gave you the name Rufus Young? A: Yes."). Detective Berrena admitted that, at the time of the arrest, "[t]here was no physical evidence . . . that linked Mr. Young to that shooting[.]" *Id.* at 23.

Based on Detective Berrena's testimony during the suppression hearing, the Court concludes that he possessed the following information prior to Petitioner's arrest: (1) there were two suspects involved in the armed robbery/shooting; (2) multiple, anonymous tipsters identified Benjamin Sanders and Rufus Young as the two perpetrators; (3) one of the anonymous tipsters

---

26 ("[Detective Berrena]: I talked to [Petitioner], requested that he come to the office so we could talk. He was very agreeable, he was polite, yes."); *cf. United States v. Mendenhall*, 446 U.S. 544, 557–58 (1980) (finding no unlawful arrest or seizure where a suspect "was simply asked if she would accompany the officers" and no "threats [or] any show of force" occurred). However, the Court will give Petitioner the benefit of the doubt here since his claim fails in any event.

who claimed that Petitioner was involved was identified by Detective Berrena; and (4) Benjamin

Sanders was positively identified as the shooter—partially vindicating the tipsters who had said

that both Sanders and Petitioner were involved.  All of this was sufficient to establish probable

cause.  It's true that an anonymous tip, by itself, cannot establish probable cause, but the Supreme

Court has clearly held that a tip with <u>sufficient corroboration</u> can meet that standard.  *See Illinois

v. Gates*, 462 U.S. 213, 242 (1983) ("[I]n making a warrantless arrest an officer may rely upon

information received through an informant, rather than upon his direct observations, so long as the

informant's statement is reasonably corroborated by other matters within the officer's

knowledge.") (internal quotations and citation omitted).

Detective Berrena was able to sufficiently corroborate these numerous anonymous tips in

two ways.  First, Detective Berrena knew the identity of at least one of the tipsters—this meant

that the tipster qualified as a "citizen-informant" whose "information is at the high end of the tip-

reliability scale." *State v. Evans*, 692 So. 2d 216, 219 (Fla. 4th DCA 1997).  Second, and more

importantly, law enforcement was able to corroborate "significant aspects of the informant's

prediction." *Lee v. State*, 868 So. 2d 577, 580–81 (Fla. 4th DCA 2004).  Recall that the tipster

identified both Benjamin Sanders <u>and</u> Petitioner as the two persons involved in the shooting; thus,

once part of the tip was confirmed to be true, it was reasonable for law enforcement to believe that

the identification of Petitioner was also reliable.  *See also, e.g.*, *Gates*, 462 U.S. at 245–46 (holding

that an anonymous letter provided probable cause to arrest the defendant since the letter accurately

detailed the defendant's travel plans); *Watkins v. Session*, No. 19-60810-CIV, 2021 WL 663762,

at *9 n.3 (S.D. Fla. Feb. 19, 2021) ("An anonymous caller reported that someone was urinating in

the park. . . . [T]he Officers arguably corroborated the anonymous caller's account of a man

urinating in a park by finding Watkins alone in the park beside a cardboard box that appeared to

be covered in urine.”); *Luke v. Gulley*, No. 19-CV-122, 2022 WL 300968, at *7–8 (M.D. Ga. Jan. 19, 2022) (“The tip also identified other suspects present at the shooting, the presence of whom was corroborated by the confidential informant and the arrest of others identified by the confidential informant. . . . A reasonable officer in the same circumstances and possessing the same knowledge as Defendant reasonably could have believed there was probable cause to arrest Plaintiff.”).  Because Detective Berrena had probable cause to arrest Petitioner, it would have been futile for defense counsel to argue that *Dunaway* applied.

Finally, Petitioner has failed to allege that he was prejudiced by the failure to call additional witnesses during the suppression hearing.  As the Court just explained, law enforcement had probable cause to arrest Petitioner; therefore, it would have been pointless for any witness to testify about the circumstances or legality of Petitioner's arrest.  *See Nelson v. State*, 875 So. 2d 579, 583 (Fla. 2004) (holding that, to prove prejudice, a defendant must show “how defense counsel's failure to call, interview, or present the witnesses who would have so testified prejudiced the case”).  To conclude, law enforcement had probable cause to arrest Petitioner for his involvement in an attempted robbery/shooting.  For that reason, defense counsel could not have been ineffective for failing to file a motion to suppress based on the premise that Petitioner's inculpatory statements were the fruit of an illegal arrest.  *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (“A lawyer cannot be deficient for failing to raise a meritless claim.”).  Accordingly, the Court DENIES Ground One.

### B.  *Ground Two*

Petitioner argues in Ground Two of the Petition that trial counsel was ineffective for failing to advise Petitioner about the applicability of the “independent act doctrine.”  Pet. at 12.  According to Petitioner, he was willing to plead guilty to the robbery counts because he and the codefendant

collectively planned to rob individuals by "merely displaying a BB gun," but he wanted to rely upon an independent act defense to contest the murder charge since "he had no knowledge that any of the victims would be approached using a real gun." *Id.* at 12–13.  Trial counsel purportedly told Petitioner that the "independent act theory does not exist" and instead relied upon an alibi defense at trial.  *Id.* at 13.  Petitioner now posits that the result of his trial would have been different if defense counsel had used and relied upon the independent act doctrine.  *Id.* at 14.

Respondent has presented three arguments in opposition: (1) defense counsel <u>did</u> attempt to instruct the jury on the independent act doctrine as an alternative basis to acquit Petitioner but "the trial court refused to give it;" (2) counsel's decision to rely on an alibi defense was a reasonable strategic decision because, unlike the independent act doctrine, Petitioner would not have to admit that he was guilty of the robbery counts; and (3) the independent act doctrine was inconsistent with his own trial testimony.  Response at 23–25.

The "independent act doctrine" is a defense under Florida law that is available to a defendant who "previously participated in a common plan" with another codefendant.  *Ray v. State*, 755 So. 2d 604, 609 (Fla. 2000).  The defendant is allowed to argue that he or she is not responsible for actions "which exceed[ed] the scope of the original plan" agreed upon by the other codefendants.  *Id.*; *see, e.g.*, *McGee v. State*, 792 So. 2d 624, 626 (Fla. 4th DCA 2001) ("Where there is evidence from which a jury could determine that the acts of the co-felon resulting in the murder were independent of the underlying felony, a defendant is entitled to an independent act instruction.").  Of course, the independent act doctrine is a unique defense since it ultimately requires the defendant to, at least partially, admit guilt.  *See, e.g.*, *Jardin v. Sec'y, Dep't of Corr.*, 543 F. Supp. 3d 1241, 1263 (M.D. Fla. 2021) (applying the independent act doctrine to burglary, robbery, and murder charges where "the underlying felony was the purchase of drugs, to which

Jardin readily concedes—insists on—his guilt"). Notably, the independent act doctrine does not apply when "the defendant was a willing participant in the underlying felony and the murder resulted from forces which they set in motion." *Ray*, 755 So. 2d at 609; *see also Washington v. State*, 873 So. 2d 1268, 1270 (Fla. 4th DCA 2004) ("For a felony murder conviction, the defendant's presence during the killing is unnecessary; the critical fact is his or her participation in the underlying felony.").

Ultimately, the Court finds that the state court reasonably applied *Strickland* in denying Ground Two since counsel did not perform deficiently. The independent act doctrine would have required Petitioner to admit that he was guilty of the four attempted armed robbery offenses charged in the Indictment—which could have subjected Petitioner to a maximum sentence of sixty (60) years in prison. *See* Fla. Stat. § 812.13(2)(a) ("If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree[.]"); Fla. Stat. § 777.04(4)(c) ("If the offense attempted . . . is a life felony or a felony of the first degree, the offense of criminal attempt . . . is a felony of the second degree punishable [by a term of imprisonment not exceeding 15 years].").[6]

A successful alibi defense, on the other hand, would have exonerated Petitioner of every charge against him in the Indictment. Suffice to say, it was eminently reasonable for defense counsel to choose a defense which applied universally instead of a more limited defense which would have required Petitioner to admit a significant amount of culpability. *See Johnson v.*

---

[6] Petitioner could make the argument that he did not possess "a firearm or deadly weapon" because he now claims that he used a BB gun during the robberies, meaning that his overall sentence could be lower. Pet. at 12. But this argument would be unpersuasive for two reasons. First, Petitioner now admits that his codefendant possessed a firearm during the attempted robberies—*i.e.*, Petitioner concedes that a firearm was used during the attempted robbery. *Id.* at 12–13. Second, Florida courts also have recognized that a BB gun can be considered a "deadly weapon." *See Dale v. State*, 703 So. 2d 1045, 1047 (Fla. 1997) ("Florida's district courts have overwhelmingly concluded that a BB or pellet gun can be a deadly weapon[.]").

*Alabama*, 256 F.3d 1156, 1177, 1180–81 (11th Cir. 2001) (holding that defense counsel made a reasonable strategic decision to advance a defense that the petitioner "was not present at the crime scene" rather than a defense "based upon [the petitioner's] lack of intent to kill and his non-participation in the murder"). Although the alibi defense was (obviously) unsuccessful at trial, counsel's decision was still a reasonable strategy since there was evidence at trial supporting Petitioner's alibi. *See id.* at 1180 ("Given the evidence available at the time and Johnson's own admissions, the strategy actually chosen by trial counsel—a 'Johnson was not there' defense—was reasonable. Although the evidence tying Johnson to the scene of the crime was persuasive, it still was circumstantial and not wholly iron-clad.").

In addition, it was also reasonable for the state court to conclude that counsel would have found an independent act defense to be futile. For one thing, Petitioner's sworn testimony at trial completely contradicted an independent act defense since he claimed that he was with a girl and not with the codefendant at the time of the robbery. *See* Trial Tr. [ECF No. 17-1] at 1409–15. Naturally, counsel could not have presented a defense that contradicted the sworn testimony of their own client. *See Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000) (holding that defense counsel properly rejected a self-defense argument since it "was inconsistent with Petitioner's own description of the killing.").[7] Even more important, however, is that the state

---

[7] In his Reply, Petitioner appears to backpedal from his own trial testimony by claiming that, had defense counsel informed him about the independent act doctrine, he "could have opted to not testify and let the evidence speak for itself[.]" Reply at 7. While it is conceivable that Petitioner might not have testified if counsel pursued an independent act defense, he cannot now disclaim his sworn trial testimony to the contrary in such an obviously self-serving manner. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *Robinson v. Sec'y, Fla. Dep't of Corr.*, No. 19-cv-1013, 2022 WL 1155296, at *6 (M.D. Fla. Apr. 18, 2022) ("Petitioner faces the formidable barrier of his sworn testimony . . . . [H]is attempt to go behind his previously sworn testimony is not well received."). As Respondent astutely summarized, "[e]ither Petitioner is now asserting he committed perjury during trial, or he is arguing that he should have been permitted to commit perjury to advance a theory he asserted was a lie during his trial testimony[.]"

postconviction court—in adopting the State's Response—concluded that the independent act doctrine did not apply. *See* State's Response [ECF No. 16-2] at 7 ("Since there was no basis to have an independent act instruction granted, relief must be summarily denied."). Although this Court has the power to review a state court's interpretation and application of <u>federal law</u>, it cannot second-guess a state court's application of <u>state law</u>. *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). The state court concluded that the independent act doctrine did not apply under state law, and this Court cannot second-guess that dispositive legal conclusion.[8] Thus, for all of the foregoing reasons, the Court DENIES Ground 2.

### C. Ground Three

Petitioner's final ground for relief is that counsel performed ineffectively by failing to object to the prosecutor's insinuation that Petitioner confessed to his mother—even though there was no evidence to support the prosecutor's claim. *See* Pet. at 16–18. Petitioner argues that the prosecutor's statement was prejudicial, as it allowed the jury to infer that he confessed to both law enforcement <u>and</u> his mother. *See id.* at 19 ("A prosecutor may not insinuate an incriminating

---

Response at 25. In short, the Court cannot ignore Petitioner's own sworn testimony at trial in order to support the viability of his habeas claim.

[8]  The Court would note, for the sake of completeness, that its review of Florida law supports the state court's conclusion that the independent act doctrine does not apply. Specifically, Florida's district courts of appeal have uniformly held that the death of a victim is a reasonably foreseeable circumstance of willingly participating in armed robberies with a firearm or deadly weapon. *See, e.g., Washington*, 873 So. 2d at 1270 ("A shooting that occurs during an armed robbery does not exceed the scope of the armed robbery so that an independent act instruction is required."); *Roberts v. State*, 4 So. 3d 1261, 1264 (Fla. 5th DCA 2009) ("[A]n independent act instruction is inappropriate when the unrebutted evidence shows the defendant knowingly participated in the underlying criminal enterprise when the murder occurred or knew that firearms or deadly weapons would be used."); *see also supra* note 6 (citing state law for the proposition that a BB gun can be a "deadly weapon" under Florida law). The Court emphasizes, however, that its own survey of state court precedent does not supersede the state court's dispositive conclusions of state law.

admission into cross-examination without a good faith basis the fact insinuated is true."). Respondent, in turn, adopts the state court's reasoning that there was evidence Petitioner told his mother that he "manned up," and the prosecutor reasonably inferred this statement was akin to a confession. *See* Response at 29 ("The statements at issue in closing were based on testimony admitted at trial, consequently, the comments were permissible."); State's Response [ECF No. 16-2] at 6 ("The comments of the prosecutor noted were fair comment on the fact that the defendant admitted to confessing to his mother about committing the crime[.]").

Both federal and Florida law provide a prosecutor with considerable leeway when he or she presents a closing argument to the jury. *See Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) ("[A] prosecutor may argue both facts in evidence and reasonable inferences from those facts."); *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982) ("Wide latitude is permitted in arguing to a jury.  Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.") (cleaned up).  A prosecutor's arguments do not require a mistrial unless the comments made are so egregious that they "deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than it would have otherwise." *Jones v. State*, 998 So. 2d 573, 589 (Fla. 2008) (cleaned up).  An example of an improper argument is when the prosecutor "insinuate[s] impeaching facts that were not supported by any evidence and that were not corroborated by actual impeachment." *Braddy v. State*, 111 So. 3d 810, 853 (Fla. 2012); *see also, e.g.*, *Evans v. State*, 177 So. 3d 1219, 1233 (Fla. 2015) ("Therefore, the prosecutor's insinuations arguably left the jury with the damaging impression that Evans stalked Beth and was so obsessed with her that he hired a private investigator to acquire information about her new boyfriend.  This line of questioning, which was not supported

by any evidence, was improper."), *overruled on other grounds by Johnson v. State*, 252 So. 3d 1114, 1115 (Fla. 2018).

As the Court sees it, the gravamen of Ground Three is whether there was sufficient evidence adduced at trial to allow the prosecutor to make the following argument:

> On the backside of the tape with the mother and detective when he confessed—I am not saying he went into detail—he told his mother, "I manned-up." He confirmed it. It is only later on he says it to the mother.

Trial Tr. [ECF No. 17-1] at 1517–18. While both parties agree that the prosecutor is referring to a video-taped statement made by Petitioner, Petitioner and Respondent, predictably, have completely divergent viewpoints on what Petitioner said in the statement. Petitioner claims that he "did not confess in that recording. . . . What the tape recorded statement actually reveals [is that] Petitioner told his mother that [Detective] Berrena said, 'Ben [Sanders] told me you did it. He manned up.'" Pet. at 19. Petitioner also denied making that statement during the trial itself. *Id.* at 18 ("Q: Did you tell your mother, when you saw it, 'Mom, that's me?' Isn't that what the detective is asking you about? A: No. I don't remember ever hearing something like that.") (quoting Trial Tr. [ECF No. 17-1] at 1433–34). Respondent argues that Detective Berrena specifically testified that "Petitioner told his mother that the co-defendant had manned up, so he did, as well, or something similar to that." Response at 27.

In denying Ground Three, the state postconviction court found that Detective Berrena testified that Petitioner made statements to his mother "about 'manning up' to the crime" and that Petitioner himself "confessed to his mother that he was involved in the shooting." State's Response [ECF No. 16-2] at 6. Therefore, Ground Three requires this Court to review the reasonableness of the state postconviction court's "determination of facts" rather than its application of the law. 28 U.S.C. § 2254(d)(2). Under AEDPA, the Court must assume that the

state court's determination of a factual issue is correct; Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1147–48 (11th Cir. 2022) ("A state court's findings on subsidiary factual questions are entitled to § 2254(e)(1)'s presumption of correctness.  This is true even when the factual findings are merely implicit.") (cleaned up).

Upon review of the state court record, the Court concludes the state court reasonably found that there was sufficient testimony at trial to allow the prosecutor to infer that Petitioner confessed to his mother.  When discussing Petitioner's video-taped statement, Detective Berrena conceded that he could not recall exactly what Petitioner told his mother, but he did specifically remember that "he told her he 'manned-up.'"  Trial Tr. [ECF No. 17-1] at 1200–01.  Petitioner himself also agreed that he told his mother that he was "involved" in the attempted robbery.  *See id.* at 1428 ("Q: Did you ever confess and tell your mother you were involved in this shooting, this attempted robbery?  A: I confessed to her what I did.").  Based on these two statements, the jury could easily infer that Petitioner told his mother: (1) that he "manned-up," and (2) that he was "involved" in the attempted robbery.  Under Florida's permissive closing argument standard, it was perfectly reasonable for the prosecutor to infer or insinuate that Petitioner's use of the phrase "manned-up" was part of his confession that he was "involved" in the attempted robbery.  *See Miller v. State*, 926 So. 2d 1243, 1254–55 (Fla. 2006) ("[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence.").

While Petitioner correctly argues that there was other evidence at trial contradicting the prosecutor's interpretation, *see* Pet. at 19, it is the province of the jury to believe or disbelieve testimony as well as accept or reject closing arguments based on their views of the evidence, *see*

*United States v. Iglesias*, 915 F.2d 1524, 1529 (11th Cir. 1990) ("The sole purpose of closing argument is to assist the jury in analyzing the evidence. . . . [A]ny prejudice was cured by the court's instructions to the jury that it should rely on its own recollection rather than the recollections of the attorneys.").  Because the state court reasonably concluded that there was factual evidence to support the prosecutor's closing argument, its conclusion that any objection to the propriety of the prosecutor's closing argument would have been meritless is also reasonable.  *See Jardin*, 543 F. Supp. 3d at 1276 ("Because an objection would not have succeeded, the state court did not unreasonably apply *Strickland*.").  Ground Three is therefore DENIED.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter.  *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA").   A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition.  Rather, to pursue an appeal, a petitioner must obtain a COA.  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the

denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not debate the correctness of the Court's denial of Grounds One, Two, or Three.  Accordingly, a COA must be denied on all claims.

**CONCLUSION**

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Petition [ECF No. 1] is **DENIED**.  Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**.  All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.  Accordingly, this case is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 20th day of July, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:    Rufus Young
       DC # L71816
       Martin Correctional Institution
       Inmate Mail/Parcels
       1150 SW Allapattah Road
       Indiantown, FL 34956
       PRO SE

       Deborah Koenig
       Office of the Attorney General
       1515 N Flagler Drive
       Suite 900
       West Palm Beach, FL 33401
       Email: deborah.koenig@myfloridalegal.com